REQUESTED BY: Terry Carlson, Executive Director Nebraska State Electrical Board
You have requested the opinion of this office regarding whether contractors hired by telephone communications utilities are subject to standard licensing requirements, and whether the work performed by such contractors is subject to inspection by the State Electrical Board ("the Board"). In your opinion request, you specifically asked,
 Does Neb. Rev. Stat. § 81-2104(5), which adopts the National Electrical Code Section 90-2(b)(4), (Exemption of Communications Utilities from Code Requirements) as State law, override other sections in the State Electrical Act which require licensing and inspection for non-communication utilities employees installing wiring for communications utilities?
In your opinion request, you explained that the basis for your question stems from uncertainty surrounding the applicability of the State Electrical Act, Neb. Rev. Stat. §§81-2101 to 81-2145 (1994), to communications towers constructed by cellular telephone companies. The towers have strobe lighting devices for aviation safety purposes. Each tower has a control building directly adjacent to it which contains large amounts of electrical wiring to control the tower's communications and lighting equipment. The cellular telephone companies do not allow their employees to perform electrical installation functions on the towers and control buildings. The companies instead hire contractors to install all the necessary wiring.
The first statute which must be examined to determine the issues involved is Neb. Rev. Stat. § 81-2104. This statute enumerates the powers of the State Electrical Board. Section81-2104(5) sets out that the Board has the following power:
 (5) Adopt, promulgate, and revise rules and regulations necessary to enable it to carry into effect the State Electrical Act. In adopting and promulgating such rules and regulations, the board shall be governed by the minimum standards set forth in the National Electrical Code issued and adopted by the National Fire Protection Association in 1993, Publication Number 70-1993. . . The board shall adopt and promulgate rules and regulations establishing wiring standards . . . which shall apply to all electrical wiring installed by licensees.
Neb. Rev. Stat. § 81-2104(5) (1994).
Section 81-2104(5) states that the Board shall be governed by the National Code's minimum standards when promulgating and adopting rules and regulations. It does not state that the National Code is adopted as or incorporated into the State Electrical Act as Nebraska law. Nor does it state that the provisions of the National Code will control if conflicts arise with Nebraska law. Thus the National Code only sets minimum standards for the Board's regulations, which are subordinate in authority to statutes in the State Electrical Act. Rules and regulations promulgated by state agencies implement the policies of statutes but are created pursuant to and limited by the authority delegated by the Legislature in the enabling statute.See State ex rel. Spire v. Stodola, 228 Neb. 107,109-110, 421 N.W.2d 436, 438 (1988).
National Electrical Code § 90-2(b)(4), states:
(b) Not Covered. This Code does not cover:
 (4) Installations of communications equipment under the exclusive control of communications utilities located outdoors or in building spaces used exclusively for such installations. [Emphasis in original.]
We also point out that National Code § 90-2(b)(4) does not establish a minimum standard, but rather exempts a specific area from regulation by the National Code. Therefore, if Nebraska regulations impose requirements which are more stringent than the National Code, the National Code neither overrides nor conflicts with the State Electrical Act or the regulations promulgated thereunder. By regulating an area not covered by the National Code, the State Electrical Act does not create standards below the minimums set forth in the National Code and §81-2104(5), but rather exceeds those minimum standards.
As you pointed out in your opinion request, under Nebraska law employees of telephone communication utilities are not required to be licensed by the State Electrical Board in order to install electrical wiring for communications equipment, so long as the equipment is under the exclusive control of the telephone company which is having the employee perform the installation. You cited to Neb. Rev. Stat. § 81-2121(1) (1994), which specifically provides that the State Electrical Act does not apply to employees of telephone or telegraph companies performing work for their employers. You also cited to Neb. Rev. Stat. § 81-2132 (1994), which exempts the work of telephone system employees from inspection requirements, so long as the employees were acting within the scope of their employment. It therefore appears clear that Nebraska law and the National Electrical Code are in conformity on these issues, in that telephone system employees and the work they perform for the companies are exempt from licensing requirements.
There appear to be essentially two questions raised by the opinion request. Those questions are: 1) Whether contractors hired by telephone communications companies must be licensed by the State Electrical Board; and 2) Whether work performed by contractors hired by the telephone communications companies must be inspected by the State Electrical Board's inspectors. In telephone conversations with our office the Board's Executive Director, Terry Carlson, requested that in the event the previous two questions were answered in the affirmative, we also address one additional question. Mr. Carlson posed the question, "Could the State Electrical Board promulgate and adopt rules and regulations exempting the installation of telephone communication equipment under the exclusive control of telephone companies from inspection requirements, when that work is performed by contractors?" We will address each question separately.
Before turning to the issues concerning electrical contractors directly, we note the distinction between employees and contractors. Employees are usually considered those persons working directly for and under the control of an employer. Employees are not usually free to exercise the great deal of autonomy or judgment in the method by which they perform their duties that contractors are allowed. Contractors tend to retain broad discretion over the method for accomplishing their tasks. In Peterson v. Christenson, the Nebraska Supreme Court, quoting from a previous decision, described the distinction in the following manner:
 This court has on a number of occasions undertaken to define an independent contractor as distinguished from an employee. . . An independent contractor is generally distinguished as being a workman who is independent in his employment; one who contracts to do a particular piece of work according to his own method, and is not subject to the control of his employer, except as to the results of his work. He is not in such a case a servant of his employer; nor can he be controlled by the employer in the manner of doing the work, except to the extent that the employer has the right to give such directions as may be found necessary to insure compliance with the contract.
Peterson v. Christenson, 141 Neb. 151, 153,3 N.W.2d 204, 205-206 (1942) (citations omitted).
The above case, as with most decisions in this area, dealt with workers' compensation issues. However, the employee-contractor distinction appears to be generally applicable.
 Must Electrical Contractors Hired By Telephone Communications Companies be Licensed by the State Electrical Board?
The primary statute dealing with this issue is Neb. Rev. Stat. § 81-2108(1). That section requires anyone installing electrical wiring to be licensed by the State Electrical Board. The statute states, in pertinent part:
 81-2108. Wiring or installing; license required; exceptions; lending license prohibited.
(1) Except as provided in subsection (2) of this section or in section 81-2110 or 81-2112, no person shall, for another, wire for or install electrical wiring, apparatus, or equipment unless he or she is licensed by the board. . . .
Neb. Rev. Stat. § 81-2108(1) (1994) (emphasis in original).
The exceptions provided in § 81-2108 deal with special categories of licenses and do not effect this discussion. There are no exceptions in the State Electrical Act allowing contractors performing electrical installation for telephone companies to operate without a license. The exemption provided in § 81-2121(1) deals specifically and exclusively with employees of telephone companies. There is no mention of similar privileges being extended to contractors hired by telephone companies.
The fact that the National Electrical Code does not cover installation of communications equipment neither conflicts with nor overrides the licensing requirement established in §81-2108(1). As previously discussed, § 81-2104(5) requires only that the Board's rules and regulations meet the minimum standards established in the National Code. Neither §81-2108(1) nor the National Code state that the National Code will control if any conflicts arise with state law.
Based on the foregoing discussion, we believe that §81-2108(1) requires contractors hired by cellular telephone companies to be licensed by the State Electrical Board. We do not believe that the provisions of § 81-2104(5) or the National Electrical Code conflict with or override the licensure requirement established in § 2108(1).
 Must Work Performed by Contractors Hired by Telephone Communications Companies be Inspected by the Electrical Board's Inspectors?
As with the issue presented by the licensure requirements of contractors hired by telephone companies, the State Electrical Act contains a statute creating broad authority in this area. Our research did not find any indication that the Legislature intended to exempt contractors from its provisions.
Neb. Rev. Stat. § 81-2124(1) requires that all new commercial electrical installations must be inspected. The statute states:
 81-2124. Electrical installations; subject to inspection. (1) All new electrical installations for commercial or industrial applications, including installations both inside and outside of the buildings, and for public-use buildings and facilities and any installation at the request of the owner shall be subject to the inspection and enforcement provisions of the State Electrical Act.
Neb. Rev. Stat. § 81-2124(1) (1994) (emphasis in original).
The above statute requiring inspections does not provide an exemption for electrical work performed by contractors on telephone company property. Neither do we know of any other provision in the State Electrical Act which would exempt such installations from inspection requirements, assuming the work performed would otherwise require inspection. As previously pointed out, the provisions of the National Code and §81-2104(5) create minimum standards for the Board's rules and regulations. They do not appear to conflict with, override, or provide exceptions to the other requirements established in the State Electrical Act, including those in § 81-2124(1). To the contrary, § 81-2104(5) has language resembling that in §81-2124(1). Section 81-2104(5) states that the Board's rules and regulations "shall apply to all electrical wiring installed by licensees." Section 81-2104(5) provides no exceptions for electrical installations performed by contractors working for telephone companies.
We therefore conclude that electrical installation work performed by contractors working on cellular telephone company equipment requires inspection.
 Could the State Electrical Board Promulgate and Adopt Rules and Regulations Exempting the Installation of Telephone Communication Equipment Under the Exclusive Control of Telephone Companies from Inspection Requirements When Such Work is Performed by Contractors?
The provisions of § 81-2104(5) and the standards established in the National Electrical Code would not prevent the promulgation of regulations exempting inspection of electrical equipment owned by telephone company facilities. Section81-2104(5) requires that any rules and regulations promulgated by the Board contain standards no less stringent than the minimum standards established in the National Code. The Board's exemption would not create standards less stringent than the National Code's, since § 90-2(b)(4) of the National Code states that the National Code does not cover installations of communications equipment if the equipment is under the exclusive control of the communications utility.
However, the requirements in §§ 81-2108(1) and 81-2124(1) would apply. In particular, § 81-2124(1) requires that all new electrical installations for commercial applications, both inside and outside buildings, are subject to inspections. The State Electrical Act does not appear to provide the Electrical Board with the discretion to grant exceptions from the normal inspection requirements. The Nebraska Supreme Court has on numerous occasions held that an administrative agency may not employ its rulemaking power to modify, alter, or enlarge provisions of a statute which it is charged with administering.Clemens v. Harvey, 247 Neb. 77, 80, 525 N.W.2d 185,188 (1994). See also State ex rel. Spire v.Stodola, 228 Neb. 107, 110, 421 N.W.2d 436, 439
(1988), and Beatrice Manor v. Department ofHealth, 219 Neb. 141, 145, 362 N.W.2d 45, 49 (1985). The National Code's exemption of installations of communications equipment would not supersede the inspection requirement established in § 81-2124(1).
Adoption of a rule or regulation exempting installation of electrical equipment performed by contractors for telephone companies would appear to constitute modification or alteration of the statutory inspection requirements created in §81-2124(1). Absent statutory authority allowing an agency to create exceptions to a statute's requirements in a particular area, decisions by the Nebraska Supreme Court indicate such regulations are beyond the scope of an administrative agency's authority. If the Board believes electrical work performed by contractors on telephone company equipment should be exempted from the State Electrical Act's inspection requirements, such a change may require legislative action.
Sincerely,
 DON STENBERG Attorney General
 Timothy J. Texel Assistant Attorney General
Approved:
Don Stenberg
Attorney General