RYAN S. BENDER, APPELLANT, V.
DEPARTMENT OF MOTOR VEHICLES, APPELLEE.
593 N.W.2d 27

Filed April 20, 1999.   No. A-98-075.

James E. Schaefer, of Gallup & Schaefer, for appellant.

Don Stenberg, Attorney General, and Hobert B. Rupe for appellee.

IRWIN, Chief Judge, and HANNON and SIEVERS, Judges.

SIEVERS, Judge.

This case involves the question of whether a litigant in an administrative license revocation proceeding must disclose in detail his or her reasons for wanting a witness before there can be judicial enforcement of a disobeyed subpoena.

## BACKGROUND

On or about July 12, 1997, at approximately 12:05 a.m., Officer Michael Versch made contact with Ryan S. Bender and Joshua Gaudreau in Towl Park, a city park in Omaha, Nebraska. Versch was dispatched to the park where a "dark colored smaller pickup truck" was allegedly being driven recklessly in the parking lot. Upon arrival, Versch observed Bender and Gaudreau changing the front driver's side tire of a black 1996 Nissan pickup. Both men admitted to Versch that Bender had been the person driving the pickup in the park and that Gaudreau was the owner of the vehicle.

Versch testified that he made some observations about Bender during their discussion in the park, "I noticed bloodshot, watery eyes, slurred speech, strong odor of alcoholic beverage about his person." Versch then administered various field sobriety tests which included the following: "backwards count from 89 to 73, say the alphabet from E to P, finger-to-nose test, one legged stand and walk and turn." Versch also administered the "horizontal gaze nystagmus" test. Versch testified that, excluding the horizontal gaze test, Bender showed impairment on all the tests.

Officer Timothy Diehm arrived with a preliminary breath test machine at some point during the aforementioned encounter. Diehm testified that after speaking with Bender for the required 15 minutes, he gave Bender the preliminary breath test. According to Diehm, Bender "failed it, testing .11." After the preliminary breath test, Versch advised Bender that he was under arrest for suspicion of driving under the influence of alcohol and transported him to Bergan Mercy Hospital to have blood drawn. Bender agreed to submit to the chemical test.

The test indicated an alcohol concentration of ".128 gram/100 ml blood or gram/210L breath." Versch testified that

he "was faxed a copy of the blood test result, and then filled it out, and then had it notarized afterwards." After signing the form, Versch mailed it to Bender. On July 24, 1997, Bender received notice that his license had been revoked. Bender contested the revocation, and an administrative license revocation hearing was held on August 14. Versch and Diehm testified at the hearing, as did Robert Horst, the nurse who drew Bender's blood at Bergan Mercy Hospital. Horst testified, "I don't run the test, I just withdraw the blood."

At the conclusion of Horst's testimony, Bender's counsel called Bill Ihm as a witness. Ihm had been subpoenaed prior to trial, but Ihm was not present at the hearing. Bender's counsel then asked the hearing officer to request that the director of the Department of Motor Vehicles (the Director) "invoke the aid of the District Court in securing Mr. Ihm's presence" pursuant to 247 Neb. Admin. Code, ch. 1, § 009.07 (1996). In response, the hearing officer requested that Bender's counsel tell him "what information you want from Mr. Ihm." He responded, "No . . . I don't wish to." We quote at length the exchange between the hearing officer and Bender's counsel:

THE HEARING OFFICER: You don't wish to, okay. Can you tell me what efforts you've made to contact Mr. Ihm?

[Counsel for Bender]: Yes, we've served him with a subpoena on the date that's in the affidavit that I gave you.

THE HEARING OFFICER: And have you made any other efforts to talk to Mr. Ihm about this case?

[Counsel for Bender]: No.

THE HEARING OFFICER: Any — have you made any effort to — well, I guess I'm assuming that your concern is the accuracy of the — well, I don't know, I guess I can't say without — if you don't tell me, I don't know.

[Counsel for Bender]: Right. Yeah, we've had this discussion before, and I don't think I need to state my reasons or my strategy for having him here on the record. I don't know of any rule or evidentiary thing that says I have to tell you why I want to call him.

. . . .

THE HEARING OFFICER: . . . absent some showing that there's some specific — that's [sic] there's some information you want, from Mr. Ihm, absent some statement from you here today of why you want him here, I'm not going to bother with the District Court and I'm not going to make any attempt to get a hold of Mr. Ihm, or assist you in getting any of that evidence.

The Director concluded that Bender was operating a motor vehicle in violation of Neb. Rev. Stat. § 60-6,196 (Reissue 1993). With respect to the hearing officer's refusal to seek the aid of the district court in obtaining the presence of Ihm, the Director stated in his order upholding the revocation:

The hearing officer asked the Appellant what information he intended to elicit from Mr. Ihm that would require involving the district court. The Appellant refused, stating that once the subpoena was issued he did not need to offer further reason for wanting the witness to appear. The Appellant stated the hearing officer was also asking him to reveal work product.

The hearing officer stated [sic] made reference to cases in which [counsel for Bender] had subpoenaed witnesses and when the witnesses appeared, he had excused them. [Counsel for Bender] stated that no other instance was a part of the record. That can be rectified. For the purpose of this hearing, the Director takes notice of two instances in recent months where [a witness] has appeared in response to [counsel for Bender's] subpoena and she has not been called to testify. The Director takes notice of [a] case . . . heard on June 26, 1997; and [a case] heard on July 1, 1997. In both of those instances, [the witness] appeared and [counsel for Bender] dismissed her without calling her to testify. The files, orders, and recording of the hearing are in the Director's possession.

The Director found that Bender had failed to take advantage of "other avenues" to get Ihm's testimony and held that "[t]he remedy for the failure of a witness is not automatically dismissal . . . . Absent some good faith showing that the Appellant is looking for evidence and not just trying to create a technical basis to

avoid revocation, the Director is not inclined to dismiss the proceeding."

Bender appealed to the district court for Douglas County, Nebraska, which affirmed the Director's findings against Bender. Bender now appeals to this court.

## ASSIGNMENTS OF ERROR

Bender argues that his driver's license revocation must be vacated because the hearing officer failed to invoke the aid of the district court to require the attendance and testimony of Ihm, which, in turn, denied him due process of law and precluded him from meeting his burden of proof.

## STANDARD OF REVIEW

A final order rendered by a district court during a judicial review pursuant to the Administrative Procedure Act may be reversed, vacated, or modified by an appellate court for errors appearing on the record. *Miller v. Horton*, 253 Neb. 1009, 574 N.W.2d 112 (1998).

## ANALYSIS

Title 247 of the Nebraska Administrative Code contains the rules and regulations governing notice and hearing for agency-contested cases pursuant to the administrative license revocation statutes found in Neb. Rev. Stat. §§ 60-6,196 through 60-6,208 (Reissue 1993 & Cum. Supp. 1996). Section 009.07 of the code, which governs witnesses and subpoenas, states, "In the case of the disobedience to a subpoena, the Director *may* invoke the aid of the applicable district court in requiring the attendance and testimony of witnesses and the production of accounts, books, documents or papers." (Emphasis supplied.)

The key word in this regulation for our purposes is "may," and its ordinary meaning is permissive and discretionary. See *State ex rel. Scherer v. Madison Cty. Comrs.*, 247 Neb. 384, 527 N.W.2d 615 (1995) (unless use of word "may" in statute would defeat purpose of statute, word is permissive and discretionary, not mandatory).

Administrative agencies may not arbitrarily deny a request for the attendance of witnesses where their testimony

may be necessary to build a complete record. 2 Charles H. Koch, Jr., Administrative Law and Practice § 5.53[2](d) (2d ed. 1997). However, in order for a party to argue that the denial of a request for a witness' attendance violates due process, the party must show that the witness' testimony would add something to the information in the record. *Davis v. Office of Personnel Management*, 918 F.2d 944 (Fed. Cir. 1990). An administrative agency, such as the Nebraska Department of Motor Vehicles, has the right to establish procedures for compelling testimony. See 2 Koch, *supra*.

The obvious purpose of § 009.07 is to allow the Director to resort to the power of the district court when a subpoena is disobeyed. Under this section, whether to seek the aid of the district court in compelling a witness' attendance is within the discretion of the Director. We examine the exercise of that discretion first, which we review under an abuse of discretion standard.

A complete discussion of what "abuse of discretion" means is found in *State v. Juhl*, 234 Neb. 33, 449 N.W.2d 202 (1989). *Juhl* articulates that discretion is the power of free decision or choice within certain legal bounds, although not controlled by fixed rules of law. Quoting Webster's Third New International Dictionary, Unabridged 647 (1981), *Juhl* says that discretion is the " 'ability to make decisions which represent a responsible choice and for which an understanding of what is lawful, right, or wise may be presupposed.' " 234 Neb. at 43, 449 N.W.2d at 209. An abuse of discretion involves a clearly untenable ruling which deprives a litigant of a substantial right and denies a just result in a matter submitted for decision. *Juhl, supra*.

The record reveals that the hearing officer in the instant case was not completely adverse to assisting Bender in obtaining Ihm's testimony. But, before involving the district court in the matter, the hearing officer wanted counsel to disclose what Ihm could offer with respect to the issue of whether Bender was operating a motor vehicle while intoxicated. Bender's attorney refused to disclose his strategy or reasons for wanting Ihm present, and he asserted that forcing him to reveal such information was an improper disclosure of his "work product." However, the

record before the hearing officer did disclose some information about Ihm.

The praecipe for subpoena, filed with the Department of Motor Vehicles on July 31, 1997, states that Ihm "[w]ill testify to the practice and procedures in analyzing the blood test." The praecipe also reveals that Ihm is employed by the "Eastern Nebraska Forensic Lab." At a minimum, we consider that these things were known to the hearing officer and to the Director. Section 009.03C of the code sets forth that to be considered, a subpoena request must state "[t]he facts expected to be established for a reasoned determination of materiality by the Director." See *State v. Fahlk*, 246 Neb. 834, 524 N.W.2d 39 (1994) (holding there are two components to relevant evidence, materiality and probative value; materiality looks to relation between propositions for which evidence is offered and issues in class). The Director, in the instant case, must have concluded that the information from the praecipe satisfied the requirements of § 009.03C because the Director issued a subpoena for Ihm to appear at the license revocation hearing.

As we have recounted, the Director's decision refers to similar past cases where counsel for Bender had subpoenaed witnesses, who appeared but were not called to testify. The Director's written decision cites two such instances which had occurred within approximately 7 weeks of Bender's hearing. This reasoning of the Director, plus the verbal exchange between the hearing officer and Bender's counsel, suggests that the hearing officer and the Director had some thought that Bender's counsel's interest in Ihm, based on other similar instances in the recent past and Bender's counsel's refusal to disclose his plans concerning Ihm, was merely a ploy to inject procedural error into the proceeding rather than to secure the production of evidence. Bender argues that he was denied due process as a result of the hearing officer's refusal to seek judicial enforcement of the disobeyed subpoena. We examine the limited authority in similar cases.

In *Davis v. Office of Personnel Management*, 918 F.2d 944 (Fed. Cir. 1990), the issue before the U.S. Court of Appeals for the Federal Circuit was whether the Merit Systems Protection

Board erred in deciding that a survivor's estate or beneficiary was not entitled to any survivor annuity benefits when application for the benefits was made by an heir of the survivor's estate after the survivor's death. In affirming the board's decision, the federal circuit court stated that a determination whether the testimony of witnesses should be presented was within the discretion of the administrative judge. The petitioner in *Davis*, as in the instant case, argued that the administrative judge's refusal to grant his request for witnesses constituted a denial of due process of law. The court held that the "petitioner has failed to come forward with evidence that the documents submitted were insufficient, or that the witnesses' testimony would add anything to the information in the record. In light of this failure, we hold that the [Administrative Judge] did not abuse his discretion." *Id.* at 946.

In *Calvin v. Chater*, 73 F.3d 87, 91 (6th Cir. 1996), the Sixth Circuit addressed an agency rule which permitted a witness to be subpoenaed for cross-examination *if* the party applying for the subpoena provided the agency a timely written explanation of why the subpoena was reasonably necessary for "full presentation of the case." The circuit court held that because Calvin's attorney failed to explain why the subpoena was necessary to his case, because the proposed witness' findings did not contradict other evidence, and because there was no suggestion of bias on the part of the judge, the administrative law judge did not abuse his discretion in denying Calvin's request for a subpoena.

The Supreme Court of Hawaii in *Biscoe v. Tanaka*, 76 Haw. 380, 878 P.2d 719 (1994), held that the issuance of subpoenas in a driver's license revocation proceeding, other than law enforcement officials required by statute to be subpoenaed, was left to the discretion of the director of the administrative driver's license revocation office. That court went on to hold:

> In order to ensure that an arrestee's rights are adequately protected, the director should issue all requested subpoenas *unless the witness does not possess any relevant evidence or the subpoena request is otherwise deficient.* If a proper request is made for a subpoena for a relevant witness, the refusal to issue the subpoena would constitute an abuse of discretion.

(Emphasis supplied.) *Id.* at 385, 878 P.2d at 724. While we do note a difference between *Biscoe* and the instant case in that the Director in this case had already issued the subpoena but refused to invoke the power of the district court to compel the witness to attend the hearing, the holding in *Biscoe* is analogous to the case at hand. And, of course, the issuance of a subpoena without enforcement of the subpoena is an empty act. In other words, if there is a basis for issuing a subpoena, then it should generally be enforced unless the record affirmatively establishes that a witness has no material and relevant knowledge.

Nonetheless, under § 009, governing witnesses and subpoenas in agency proceedings, there is not an absolute right to subpoena witnesses or invoke the aid of the district court to enforce a subpoena. In this regard, we recall that an administrative license revocation is not a criminal proceeding. See *State v. Young*, 249 Neb. 539, 544 N.W.2d 808 (1996) (administrative license revocation designated as civil matter, thereby maintaining separation between criminal driving while under influence prosecution and administrative revocation, thereby avoiding double jeopardy problems). Under these regulations, specifically § 009.03C, if a subpoena has been issued, an implicit finding by the Director of materiality is established, then declining to enforce the disobeyed subpoena leaves the litigant in an untenable position because Bender has the burden of proof in the instant case. See *McPherrin v. Conrad*, 248 Neb. 561, 537 N.W.2d 498 (1995) (in administrative license revocation proceeding, burden is upon driver to prove that one or more recitations in arresting officer's sworn statement were false). The driver can subpoena a witness, but if the witness ignores the subpoena, the driver is helpless without the assistance of the hearing officer or the director.

In *Miller v. Tanaka*, 80 Haw. 358, 910 P.2d 129 (Haw. App. 1995), the director in charge of administrative license revocation refused to issue subpoenas for two police officers who administered and observed field sobriety tests. Citing *Biscoe, supra*, the Hawaii Court of Appeals found that the two officers obviously possessed evidence relevant to the question of the driver's intoxication and the refusal to issue subpoenas for their presence was a "clear abuse of discretion." *Miller*, 80 Haw. at

366, 910 P.2d at 137. In the instant case, the hearing officer and the Director knew from the praecipe for subpoena that Ihm was an employee of a forensics laboratory and that he would testify about the analysis of "the blood test." The question, therefore, becomes whether Bender and his counsel needed to disclose to the hearing officer and the Director more information about how Ihm would have been used in order to support Bender's burden of proof.

Ihm clearly possessed relevant and material information about the blood test, which was the basis for the revocation proceeding. No authority is cited for the proposition that a driver's counsel, in a license revocation proceeding, needs to disclose how he or she will attack a witness' testimony or conclusions in order to enforce a subpoena when the hearing officer already knows that the witness' knowledge is material and relevant. What distinguishes this case from those relied upon by the Department of Motor Vehicles is that the materiality and relevance of Ihm's testimony was already known to the hearing officer and the Director and that the subpoena had already been issued. To refuse to enforce the subpoena when the witness disobeys under these circumstances is an arbitrary and untenable decision.

We now turn to the Director's rationale for refusing to invoke the district court's aid in enforcing the subpoena, which was that Bender's counsel had in the recent past subpoenaed witnesses who appeared but were not called as witnesses. These are not facts of record before the hearing officer, but are recited in the Director's decision expressly for the purpose of filling in what was missing from the record. The Director's action in adding to the evidential record via his order is unusual and improper. The reliance by the Director upon facts not of record is akin to the decisionmaker taking on the role of a witness. See *State v. Rodriguez*, 244 Neb. 707, 509 N.W.2d 1 (1993) (judge presiding at trial may not testify either formally or by assuming role of witness). A litigant's case should be decided on its own merits from the evidence in the record, not by what his or her lawyer has or has not done in another case in the past.

## CONCLUSION

The decision of the hearing officer and the Director not to seek enforcement of the subpoena to Ihm, which Ihm disobeyed, was arbitrary and untenable. The witness had knowledge which was relevant and material, a matter which had been predetermined by the issuance of the subpoena. The basic reason for issuing the subpoena was disclosed in the praecipe for subpoena. Disclosure of Bender's counsel's strategy and tactics for this witness, when relevancy and materiality are known and established, is not required in order for the Director to know whether to enforce the disobeyed subpoena. Finally, referencing tactics of Bender's counsel in other cases to decide whether to enforce a subpoena in the present case under litigation is facially a denial of due process where such facts are not in the record and Bender's counsel is given no opportunity to respond to the matter. See *In re Interest of Teela H.*, 4 Neb. App. 608, 547 N.W.2d 512 (1996) (due process, although eluding precise definition, is notion requiring that there be fundamental fairness which involves, among other things, notice and opportunity to be heard). For these reasons, we find that the Director erred in not sustaining Bender's motion that the hearing officer seek the assistance of the district court in enforcing the subpoena. We reverse the district court's affirmance of the Director's order revoking Bender's license and remand the cause for a new hearing.

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.